# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MICHAEL OTT,

    Plaintiff,

v.                                                     No. CIV 19-756 WJ/SMV

UNITED STATES OF AMERICA,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION TO INCREASE AD DAMNUM CLAUSE

THIS MATTER comes before the Court upon Plaintiff's Motion to Increase Ad Damnum Clause, filed August 26, 2020 (**Doc. 28**). Having reviewed the parties' briefing and the applicable law, the Court finds that Plaintiff's motion is not well-taken and, therefore is denied.

## BACKGROUND

Plaintiff brings this case under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671, et seq. and 28 U.S.C. §1346(b), alleging that Gabriel Gonzalez, an agent with United States Customs and Border Protection, Department of Homeland Security, struck Plaintiff with the front of his vehicle at a Love's Truck Stop Station in Lordsburg, New Mexico on November 24, 2017. The parties do not dispute that Agent Gonzales and Plaintiff were involved in a vehicle-pedestrian accident. Plaintiff alleges that Agent Gonzales failed to keep a proper lookout while he was driving and struck Plaintiff as he was walking through the truck stop property. The complaint was filed in federal court on August 19, 2019 and alleges that Plaintiff has suffered "severe and permanent harm" as a result of Agent Gonzales' negligence. Doc. 1, ¶15.

Plaintiff submits medical records from the University of El Paso Medical Center in El Paso, Texas from December 2017 indicating a "primary diagnosis" of occipital fracture, as well as various secondary diagnoses including traumatic brain injury and brain bleeds (*see* Doc. 28-1 at 23, noting "traumatic subdural hemorrhage with loss of consciousness of unspecified duration"). Plaintiff also suffered a left wrist fracture (Doc. 28-1 at 25).

Plaintiff filed an administrative claim ("SF-95") on January 26, 2018, alleging "extensive bodily injuries; head trauma, fractured skull, broken left arm, bruising over his entire body, leg and back pain and injuries to his body in general." Doc. 28-1 at 28. Plaintiff claimed damages in the amount of $2,000,000.00 for injuries sustained in the accident. Doc. 28-1 at 28.[1] The claim was denied in full on June 5, 2019. Doc. 28-1 at 31.

Plaintiff's Life Care Plan and Cost Analysis was prepared June 10, 2020 by two health care experts and indicates that as a result of the injuries sustained in the accident, and based on his chronic pain and cognitive deficiencies such as decline in memory and concentration, Mr. Ott (who is almost 58 years of age) will require treatment from numerous physicians and other health care professionals for the rest of his life. Ex. 7 at 20.[2] The care planners also noted that Mr. Ott's reported symptoms and diagnosis of disturbance of taste and/or smell will require that Plaintiff be evaluated by a neuro-otologist/ENT specialist (otolaryngologist). *Id.* Based on a projected life expectancy of an additional 24 years, Plaintiff's life care planners opine that his lifetime cost and potential care needs will amount to almost $2,000,000.00 Ex. 7 at 22, 39-41. Thus, Plaintiff argues that $2,000,000.00 (which is the current ad damnum) is insufficient to

---

[1] The actual amount of damages requested on the form is $2,500,000.00, but the Court refers to the amount as $2,000,000.00 following both parties' lead.

[2] The Life Care Plan and Cost Analysis for Plaintiff was prepared by Rehabilitation Professional Consultants in San Antonio, Texas. The plan was signed by David J. Altman, MD, CLCP and Dan M. Bagwell, RN, CLCP, CCM. Doc. 28-1 at 41 (Ex. 7).

fully compensate Mr. Ott for his past expenses and damages as well as his future expenses and damages. *See* Doc. 28-1, Table 1, Life Care Cost Analysis (Ex. 7).

## DISCUSSION

Plaintiff seeks to increase the requested relief in his administrative claim from $2,000,000.00 to $7,500,000.00, based on Plaintiff's diagnosis of "permanent loss of smell and taste after the filing of his claim, as well as his traumatic brain injury, his lifetime costs and potential care needs . . . ." Doc. 28 at 1. Specifically, Plaintiff contends that he has developed a new injury not reasonably foreseeable at the time he filed the administrative claim, which warrants an increased claim under 28 U.S.C. §2675(b). Defendant contends that Plaintiff has not met the standard under §2675(b) to modify the administrative claim amount.

**I.      Relevant Law**

An action under the Federal Tort Claims Act ("FTCA") "shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except" under two circumstances: (1) "where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency," or 2) "upon allegation and proof of intervening facts, relating to the amount of the claim." 28 U.S.C. § 2675(b). "The Tenth Circuit has not addressed the question of what constitutes 'newly discovered evidence' or 'intervening facts' under § 2675." *Tolbert v. United States*, No. CV 05-178 MV/RHS, 2006 WL 8444134, at *2–3 (D.N.M. June 7, 2006). However, the focus of the §2675(b) analysis is "on the foreseeability of the injury." *Id*. If the condition was reasonably foreseeable at the time the claim was filed, an increase will not be allowed. *Id.*[3]

---

[3] Other circuits define "newly discovered evidence" similarly. *See Reilly v. United States*, 863 F.2d 149, 171 (1st Cir. 1988) (Section 2675b) "demands a showing that some new and previously unforeseen information came to light between the time of filing the administrative claim and the trial on damages"); *Low v. United States*, 795 F.2d 466, 470 (5th Cir. 1986) ("newly discovered evidence or intervening facts must not have been reasonably capable of

3

**II.     Analysis**

The burden of proving newly discovered evidence or intervening facts rests with the FTCA claimant. *Id.* As between an FTCA claimant and the government, the FTCA claimant "is in by far the better position to determine the worst-case scenario or, if uncertain, to paint the picture as bleakly as reason permits and conscience allows" when filing the claim. *Reilly v. United States*, 863 F.2d 149, 173 (1st Cir. 1988). Accordingly, "[i]f a plaintiff misjudges, as to matters known or easily deducible when her claim is filed, it seems more equitable for her to bear the burden of miscalculation than to impose it on the sovereign." *Id.*

A.     "Newly Discovered Evidence" or "Intervening Fact" [4]

Plaintiff contends that he has developed a new injury—that is, loss of smell and taste—which was not reasonably foreseeable at the time of the filing of the administrative claim in January 2018 and that in fact, he did not discover this injury until almost a year after he filed that claim. Plaintiff acknowledges that he first reported decreased appetite and loss of taste to Dr. Anne Lee on January 19, 2018, but insists that this injury was not ascertainable until November 6, 2018 when Dr. Noah Kaufman who performed a neuropsychological evaluation after a referral from Dr. Lee.  It was only then that Dr. Kaufman diagnosed Mr. Ott with "disturbance of taste and/or smell." Ex. 5 at 22-23.

---

detection at the time the administrative claim was filed"); *Allgeier v. United States*, 909 F.2d 869, 878 (6th Cir. 1990) ("intervening fact" must be unexpected or unforeseen"); *Fraysier v. United States,* 766 F.2d 478, 480-81 (11th Cir. 1985) (a reasonably based change in expectation as to the severity and permanence of an injury is newly discovered evidence within the meaning of §2675(b)).

[4] Plaintiff also contends that he is entitled to increase the amount of his administrative claim with regard to his traumatic brain injury because did not know the full extent of the physical, cognitive and emotional problems he sustained until his life care plan was completed three years after the accident.  The Court will address this argument in the next section regarding whether this alleged lack of knowledge constitutes a basis to modify the amount of Plaintiff's administrative claim under §2657(b).

However, Defendant presents evidence that Plaintiff's complaints regarding his loss of smell and taste were well-documented in the medical records prior to the filing of his administrative claim on January 26, 2018:

(1) Plaintiff reported "loss of taste" to his treating physician, Dr. Lee, according to a medical record dated December 11, 2017. Doc. 28-1 at 39;

(2) Plaintiff's medical record dated December 2, 2017 reflects that Plaintiff reported to Dr. Lee that "food and drinks are tasteless." Doc. 32, Ex. A at 1;

(3) On December 2, 2017, Plaintiff reported to Dr. Lee that "he continues to have decreased taste." *Id.* at 2; and

(4) Plaintiff's medical record dated January 9, 2018, reflects that plaintiff complained to Dr. Lee that he "continue[d] to have diminished taste."

Dr. Kaufman "diagnosed" Plaintiff with disturbance of taste and/or smell on November 12, 2018, but there is no indication that Dr. Kaufman performed any tests on Plaintiff in order to arrive at that diagnosis. It appears that the diagnosis was made relying solely on Plaintiff's self-reports, as indicated in a medical note that:

> According to Mr. Ott, the following symptoms have become a concern to him: "short-term memory loss"; "no sense of taste"; "no sense of smell"; and "I don't sleep."

Doc. 28-1 at 33. Based on this evidence, the Court must agree with Defendant that Plaintiff's claim of "newly discovered evidence" or "intervening facts" regarding Plaintiff's loss of smell and taste is nothing more than a belated formal medical diagnosis of a set of symptoms which Plaintiff knew about and reported to his health care provider before he filed his claim. *See Powers v. United States*, 589 F. Supp. 1084, 1110 (D. Conn. 1984) ("[d]iagnoses which are merely cumulative and confirmatory of previous diagnoses do not constitute either "'newly discovered evidence'" or "'intervening facts,'" for the purposes of §2675(b). Thus, Dr. Kaufman's subsequent diagnosis does not satisfy Plaintiff's burden to show either "newly

discovered evidence" or "intervening facts" which would entitle him to modify the amount requested in his administrative claim.

      B.      <u>Whether Plaintiff Did Not Know Full Extent of His Injury At Time of Claim</u>

In the SF-95, Plaintiff alleged head trauma and fractured skull and so evidence of these injuries cannot fairly be described as "newly discovered evidence" or "intervening facts" under §2675(b). Nevertheless, Plaintiff maintains that because of the complexities of his symptoms relating to his traumatic brain injury ("TBI"), he was not in position to reasonable foresee the cognitive, emotional and neurological deficits he would be experiencing three years post-injury when he submitted the claim in January 2018. Thus, he argues that the life care plan done in June 2020 should be considered "newly discovered evidence" or "intervening facts" allowing him to increase the claim amount.

There are several problems with this argument. First, Plaintiff cannot show that he could not have learned the value of his claim at the time of filing by exercising due diligence. *See Williams v. United States*, 608 F. Supp. 269, 273 (S.D. Fla. 1985) (denying motion for leave to increase ad damnum based on expert report, where plaintiffs did not allege any reason as to why the psychologist could not have examined infant plaintiff prior to presenting administrative claim). Plaintiff blames COVID-19 for the delay in obtaining the experts' cost estimate but he offers no details as to why the coronavirus prevented him from seeking out more specific information regarding his expected life care costs prior to January 2020 before the pandemic became a concern.[5]

---

[5] An internet search will reveal that the coronavirus disease (COVID-19) was first identified in December 2019 in Wuhan, China. The World Health Organization declared the outbreak a Public Health Emergency of International Concern in January 2020 and a pandemic in March 2020. This court issued its first Administrative Order requiring the screening of courthouse visitors on March 13, 2020. *See* Admin. Order, 20-mc-0004-8. Thus, Plaintiff actually had the life care plan prepared *before* the coronavirus pandemic posed an issue for potential delay, so the pandemic does not explain why Plaintiff waited until January 2020 to further investigate a basis for damages.

Second, Plaintiff makes much of the fact that he filed his administrative claim only two months after the incident, and so could not be expected to reasonably foresee the full extent of his injuries in so short a period of time. Curiously, though, Plaintiff does not explain why he precipitously filed the claim two months after the incident when he had two *years* in which to do so. *See* 28 U.S.C. §2401("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues"). The two year-period would have expired just two months shy of the date the life care plan was completed and so would have allowed Plaintiff a considerable amount of additional time in which to investigate the extent of his injuries and associated expenses.

Third, even if this Court were to accept Plaintiff's excuses for his less-than-due diligence, the life care plan still cannot be considered "newly discovered evidence" or an "intervening fact" because there is nothing in the record to suggest that the life care experts would not have come to the same conclusion had they examined Plaintiff at the time he filed his administrative claim. In *Benjamin v. United States*, the District of Colorado rejected the plaintiff's argument that he could not obtain an economic analysis of the impact of the accident until his condition had stabilized. 85 F. Supp. 2d 1034, 1036 (D. Colo. 2000). The court explained that absent actual intervening circumstances since the filing of the claim, such as "an unanticipated deterioration in his condition or unforeseeable additional injuries that justify circumventing the administrative ad damnum clause," the amount of the claim could not be amended.[6]

In his reply, Plaintiff offers as "newly discovered evidence" the results from additional testing, a Diffusion Tensor Imaging ("DTT") completed on September 16, 2020 by Dr. Huma

---

[6] *See also Wilson v. United States*, No. CIV.A. GLR-12-824, 2012 WL 6761368, at *2 (D. Md. Dec. 28, 2012) (expert report on damages does not constitute "newly discovered evidence" or "intervening facts" where the underlying facts forming the basis of the opinion were known to the Plaintiff prior to, and during the pendency of, the administrative claim).

Haider, the Medical Director of the National Brain Injury Institute. Exs. 8 & 9 ("Initial Comprehensive Evaluation Via Telemedicine" and "Diffusion Tensor Imaging Report and Analysis, Doc. 44 at 8-57. Dr. Haider's examination of Michael Ott revealed: 1) a moderate problem with short term and long term memory; 2) a moderate problem with processing speed/confusion; 3) a moderate problem with insomnia; and 4) loss of sense smell and taste. Dr. Haider also diagnosed Plaintiff with a "newly onset" communication problem from his brain damage. *See id.* at p. 13. Dr. Haider ultimately diagnosed Plaintiff with a moderate traumatic brain injury with neurocognitive deficits. *Id.* at 8.

The Court finds that neither Plaintiff's June 2020 life care plan nor Dr. Haider's September 2020 DTI testing and evaluation constitutes "newly discovered evidence" or "intervening facts" under §2675(b).  Plaintiff presented with "traumatic stupor & coma" as early as December 2017, following his admission to El Paso University Medical Center following the accident. The life care plan puts a detailed price tag on future living expenses for Plaintiff's conditions, as presented by Plaintiff's experts (increasing requested damages by an additional $5,499,41.35), and the DTI does not change Plaintiff's prognosis or expectations.  As Defendant observes, the life care plan is based on the same symptoms Plaintiff experienced at the time of the claim, except for the "new" diagnosis of lack of smell and taste, which Plaintiff was experiencing and self-reporting *before* he filed the claim.  In addition, the dates that both the life care plan and DTI were completed strongly suggest that they were done for purposes of litigation and while there is nothing suspect about such preparation, there is also no legal authority saying that additional testing and expert evaluation qualifies as "newly discovered evidence" or "intervening facts" – in fact, quite the contrary. *See, e.g., Hill v. United States*, No. C00-4620 BZ, 2002 WL 855909, at *1 (N.D. Cal. Apr. 26, 2002) (rejecting argument that expert report was

newly discovered evidence where "nothing in the record suggests that [the expert] would not have come to the same conclusion had he examined plaintiff" at time he filed his administrative claim).

Plaintiff relies on *Fraysier v. United States* for support of his argument that a reasonably based change in expectation as to the severity and permanence of an injury is "newly discovered evidence" within the meaning of §2675(b). However, the circumstances in *Fraysier* were quite different. 766 F.2d 478, 480-81 (11th Cir. 1985). Mr. Fraysier received a swine flu vaccination from a Veterans Administration (VA) Hospital in November 1976 and within two weeks experienced pain and weakness in his lower extremities which increased until he was almost paralyzed. His condition improved over the following year although not to full normalcy. On January 10, 1978, Mr. Fraysier filed an administrative claim asking $50,000.00, attaching a medical note stating that his diagnosis in early 1977 was "staphylococcal sepsis" and that his prognosis was "fair." The Government denied Mr. Fraysier's claim.

Unbeknownst to Mr. Fraysier, at the time he made the agency claim, he had Guillain-Barre Syndrome which was proximately caused by the swine flu vaccination, but it had not yet been diagnosed. As the Court of Appeals for the Eleventh Circuit noted, Guillain-Barre Syndrome is "difficult to diagnose and has varied long term effects." 766 F.2d at 479. In August 1980, Mr. Fraysier brought suit under the FTCA seeking $1,500,00.00 and received a judgment at trial for $275,000.00. The issue then became whether his claim was limited to $50,000.00 under the FTCA.

By the time his lawsuit was tried, Mr. Fraysier had a reasonable basis to conclude that his injuries were permanent. The district court found that this change in Mr. Fraysier's prognosis— that his paralysis was permanent—constituted newly discovered evidence. This was not known

9

at the agency level when the claim was submitted—at that time, Plaintiff reasonably believed that his condition was temporary at the time he filed the claim—and since permanent injuries "obviously warrant more damages than temporary ones," the Eleventh Circuit held that the district court did not err in refusing to limit Fraysier's claim to $50,000.00.

Plaintiff cannot rely on *Fraysier* to argue that his life care plan, Dr. Kaufman's diagnosis regarding loss of smell and taste, and Dr. Haider's DTI results are "newly discovered evidence" or "intervening facts" because these were either formal confirmations of, or additional information regarding, previously known injuries. Unlike Mr. Fraysier, Mr. Ott did not present to the agency a different injury or a completely different prognosis. There was nothing in the SF-95 form suggesting that any of his medical conditions were only temporary or not serious.

Plaintiff also claims that his symptoms have not only not resolved, but have worsened. Plaintiff is correct that an unforeseen worsening may constitute "newly discovered evidence" under §2675(b), and cites to *Powers v. United States* for support. Robert Powers filed a lawsuit for alleged medical malpractice in treatment he received at a VA hospital in connection with posterior cervical facet fusion. The issue was whether Mr. Powers could obtain recovery that exceeded the amount of this administrative claim for $2,000,000.00. Evidence was presented at trial that since Mr. Powers filed his claim, he had experienced an "increasing degree of such paralysis, the muscular atrophy, the worsening pain associated therewith, and the unanticipated need for extensive nursing care," and that this constituted newly discovered evidence was not reasonably discoverable."

However, *Powers* does not advance Plaintiff's position because the record that is available in this case does not support a finding that Mr. Ott's symptoms have actually worsened. *Cmp. Zurba v. United States*, 318 F.3d 736, 739 (7th Cir. 2003) (district court did not commit

clear error in concluding that newly discovered evidence and/or intervening facts as to plaintiff's emotional injury existed where she presented substantial evidence that her fears and anxieties had all become significantly worse only after she had filed her claim with the FBI).[7]

## CONCLUSION

In sum, the Court finds and concludes that, based on the present record, Plaintiff has not met his burden of showing the existence of "newly discovered evidence" or "intervening facts" relating to the amount of the administrative claim sufficient to allow him to increase the claim amount under §2675(b). *See Schwartz v. United States*, 446 F.2d 1380, 1381 (3d Cir. 1971) (where plaintiff did not meet burden of showing any newly discovered evidence or intervening facts, claim "must be limited to the amount claimed before the (federal) agency" under §2675(b)).

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion to Increase Ad Damnum Clause **(Doc. 28)** shall be DENIED for reasons described in this Memorandum Opinion and Order.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[7] *See also Michels v. United States,* 31 F.3d 686, 689 (8th Cir. 1994) (plaintiff was entitled to recover damages in excess of the original claimed amount because although he had known that his injuries carried with them the possibility of arthritis and necrosis, he did not factor those possibilities into his administrative claim because at the time of the filing he had not shown signs of either) (emphasis added); *Tolbert v. United States*, No. CV 05-178 MV/RHS, 2006 WL 8444134, at *1 (D.N.M. June 7, 2006) (allowing Plaintiff to amend administrative claim pursuant to §2675(b) where there was no evidence that plaintiff's physicians anticipated that motor vehicle accident would accelerate progression of plaintiff's pre-existing degenerative disease) (emphasis added*).*